UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MANUEL TYRONE MILES,

    Plaintiff,

v.                                                    CAUSE NO. 3:19-CV-456 DRL

B. DORRE *et al.*,

    Defendants.

## OPINION & ORDER

Manuel Tyrone Miles awoke to a fire in his cell at the Indiana State Prison. Within a few minutes, Sergeant Walter Taylor and Correctional Officer Cassandra Andrews arrived at the cell, though by that time Mr. Miles had already put out the fire. Mr. Miles was escorted to the medical services unit for treatment. Correctional Officer Brittany Dorre took pictures of Mr. Miles' hands and burnt items from his cell. Mr. Miles sued Sergeant Taylor, Officer Andrews, and Officer Dorre in their individual capacities for violating his constitutional rights. Today the defendants request summary judgment. The court now grants summary judgment.

## BACKGROUND

On March 9, 2018, Manuel Tyrone Miles was incarcerated at the Indiana State Prison [ECF 75-1; ECF 75-2 at 13:1-9]. He was housed in cell 532 E [ECF 75-1]. That day he woke up and his cell was on fire and he got burned [*id.*; ECF 75-2 at 16:4-5, 18:23-19:1]. Mr. Miles didn't see how the fire started [ECF 75-2 at 21:8-9]. Mr. Miles looked toward the electrical outlet in his cell and that little area was on fire [*id.* 16:25-17:2, 21:13-14]. He pulled a cord out from the wall and put the fire out [*id.* at 17:7-17, 23:20-24:2]. At the time of the fire, Mr. Miles had a curtain hanging up in his cell that blocked the view of his cell, though he knew he wasn't supposed to do that [*id.* 20:6-25]. Mr. Miles estimated that only a minute or two passed between the time that he woke up and noticed the fire and the time

that he put it out, though he wasn't sure of the exact timeframe [*id.* 24:3-8]. Mr. Miles remembered Sergeant Walter Taylor, Officer Cassandra Andrews,[1] and Officer Brittany Dorre responding to his cell, but he wasn't sure if they arrived at the same time [*id.* 28:22-29:3]. By the time they arrived, he had already put out the fire [*id.* 29:9-11]. Only a few minutes passed between the time that Mr. Miles put out the fire and the time that any correctional staff responded [*id.* 29:4-8]. The officers asked what happened, looked at Mr. Miles' hand, and escorted him to medical [*id.* 30:15-19].

At approximately 10:40 p.m.,[2] Officer Andrews heard the fire alarm in the C Cell House [ECF 75-3 ¶ 6; ECF 75-6]. When she walked onto the 500E range, she saw smoke coming out of Mr. Miles' cell [ECF 75-3 ¶ 7; ECF 75-6]. Mr. Miles told her that his electrical outlet had caught on fire and that he had already put it out [ECF 75-3 ¶ 9; ECF 75-6]. Officer Andrews didn't see any fire [ECF 75-3 ¶ 9]. She didn't have any knowledge regarding whether Mr. Miles ever had any electrical problems in his cell, and Mr. Miles didn't communicate any such concerns to her [*id.* ¶ 13]. Officer Andrews called for Sergeant Taylor to meet her in front of the cell [*id.* ¶ 10; ECF 75-6].

Sergeant Taylor responded to the fire alarm at about the same time as Officer Andrews [ECF 75-4 ¶ 5; ECF 75-7]. He was called up to the 500 range to cell 532 East by Officer Andrews [ECF 75-4 ¶ 7; ECF 75-7]. When he arrived, he had Mr. Miles step out of his cell [ECF 75-4 ¶ 8; ECF 75-7]. He saw that Mr. Miles' hands looked to have melted plastic on them, and Mr. Miles was then escorted over to medical [ECF 75-4 ¶¶ 9-10; ECF 75-7; *see also* ECF 75-2 at 30:20-31:7]. Like Officer Andrews, Sergeant Taylor didn't have any knowledge regarding whether Mr. Miles had ever experienced any

---

[1] At all relevant times, Officer Andrews' last name was Andrews (her maiden name), though her last name is now Clouse [ECF 75-3 ¶ 3]. The court refers to her as Officer Andrews throughout this order for the sake of clarity.

[2] Officer Andrews and Sergeant Taylor both reported that they responded to the fire alarm at 10:40 p.m. [ECF 75-6; ECF 75-7], whereas Mr. Miles testified that this happened "in the morning time" or "[he doesn't] know, it seemed like it was the morning time" [ECF 75-2 at 26:6-8]. Whether the fire occurred in the morning or the evening isn't a material fact.

electrical problems in his cell [ECF 75-4 ¶ 15]. Mr. Miles was moved to a different cell after this incident [*id.* ¶ 12; ECF 75-2 at 35:20-24].

Officer Dorre wasn't part of the responding team to the incident nor did she see the fire that started from Mr. Miles' wall outlet [ECF 75-5 ¶ 4]. Because she wasn't part of the responding team, she didn't write an incident report [*id.* ¶ 5]. Officer Dorre took photographs of Mr. Miles' hands while he sat in the medical services unit and photographs of the burnt items that were confiscated [*id.* ¶ 8]. That was the extent of her involvement [*id.* ¶ 9]. Like Officer Andrews and Sergeant Taylor, she didn't have any knowledge regarding whether Mr. Miles ever had any electrical problems in his cell [*id.* ¶ 12].

On June 10, 2019, Mr. Miles filed a *pro se* complaint [ECF 1]. He filed an amended *pro se* complaint on July 22, 2019, [ECF 7], and the court granted him leave to proceed against Sergeant Taylor, Officer Andrews, and Officer Dorre in their individual capacities on a deliberate indifference claim under the Eighth Amendment [ECF 8]. Mr. Miles then obtained counsel and filed a motion to amend his complaint [ECF 19], and the court allowed his second amended complaint on December 5, 2019, which added Warden Ron Neal as a defendant [ECF 27; ECF 28]. On April 16, 2021, Mr. Miles agreed to dismiss his claims against Warden Neal with prejudice [ECF 70; ECF 71]. The remaining defendants moved for summary judgment on all claims [ECF 75]. The defendants also moved to exclude testimony of Frederick Hackett and Tina Church [ECF 82; ECF 84]. Mr. Hackett is a fire investigator, and he offered his opinions as to the causation of the fire loss in Mr. Miles' cell [ECF 82-1]. Ms. Church is the President of Specialized Investigative Consultants, Inc., and she likewise investigated the cause of the fire [ECF 84-1]. These motions are now ripe for review.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to

find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll. v. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

### A. *Abandoned or Dismissed Claims.*

The operative complaint includes a handful of claims against Sergeant Taylor, Officer Andrews, and Officer Dorre in their individual capacities: an Eighth Amendment claim for cruel and unusual punishment (count two), an Eighth Amendment claim for refusal to provide sufficient medical care (count three), a Fourteenth Amendment claim (count four), a First Amendment claim (count five), and a medical indifference claim (count six) [ECF 28].[3] Mr. Miles voluntarily relinquished

---

[3] The claims in counts three, four, and six were also asserted against "JANE DOE NURSE" [ECF 28 at 10-11, 13]. However, Mr. Miles voluntarily relinquished his claims in counts three and four [ECF 81 at 22], and Mr. Miles' claim in count six for "medical indifference" is duplicative of his claim in count three because, there, he again alleges that the defendants deliberately denied him medical attention. Because the claim in count six is duplicative of the one in count three, it has also effectively been relinquished. Aside from that, the Jane Doe Nurse mentioned in the second amended complaint has never been identified or served. Accordingly, even if Mr. Miles hadn't relinquished these claims against Jane Doe Nurse, they would be dismissed. *See Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997); *see, e.g., Buchanan-Moore v. City of Milwaukee*, 576 F. Supp.2d 944, 950

4

his Eighth Amendment claim for refusal to provide sufficient medical care and his Fourteenth Amendment claim [ECF 81 at 22]. Mr. Miles' response didn't defend his medical indifference claim or his First Amendment claim, so he abandoned these claims. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008). Only Mr. Miles' Eighth Amendment claim for cruel and unusual punishment remains for adjudication.

      B.     *Eighth Amendment Claim for Cruel and Unusual Punishment.*

Mr. Miles claims that Sergeant Taylor, Officer Andrews, and Officer Dorre acted deliberately indifferent to the risk of fire in his prison cell and thereby violated the cruel and unusual punishment clause of the Eighth Amendment. "A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation." *Shorter v. Lawson*, 403 F. Supp.2d 703, 706 (N.D. Ind. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *accord Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

As to the objective prong, Mr. Miles points out that "fire and occupational safety are legitimate concerns under the eighth amendment." *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985). Though true, the defendants argue that Mr. Miles cannot satisfy the subjective prong. "[I]n covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021). Specifically, the plaintiff must establish that each defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from

---

(E.D. Wis. 2008) ("Because no individuals have ever been named to replace the anonymous designations, the claims against the John and Jane Does will be dismissed.").

occurring even though he could have easily done so." *Farnham*, 394 F.3d at 478 (internal quotation marks, brackets, and citations omitted). "[S]howing mere negligence is not enough." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). The court examines the personal involvement of each prison official in this analysis of an Eighth Amendment claim. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

Here, Sergeant Taylor, Officer Andrews, and Officer Dorre each testified that they didn't have any knowledge regarding whether Mr. Miles ever had any electrical problems in his cell [ECF 75-3 ¶ 13; ECF 75-4 ¶ 15; ECF 75-5 ¶ 12]. Mr. Miles testified that, before the fire, he didn't have any issues with the electrical sockets in his cell [ECF 75-2 at 52:9-16]. Officer Andrews testified that Mr. Miles had never communicated any concerns about electrical problems in his cell to her [ECF 75-3 ¶ 13]. These individual defendants didn't know that Mr. Miles was at serious risk of harm because they didn't know that Mr. Miles had any electrical problems in his cell. For that reason, no reasonable jury could find that Sergeant Taylor, Officer Andrews, or Officer Dorre acted with deliberate indifference toward Mr. Miles regarding the risk of fire in his cell.

Mr. Miles argues that these defendants were generally aware of fires occurring at the Indiana State Prison. Mr. Miles testified that he was aware of other fires occurring in the facility [ECF 81-2 at 62:10-13], but he didn't say whether these were also electrical fires or whether Sergeant Taylor, Officer Andrews, or Officer Dorre had knowledge of any of these fires.

Mr. Miles also points to incident reports of other fires at the Indiana State Prison to try to establish the defendants' awareness of the risk of harm to Mr. Miles [ECF 81-19]. However, a review of these reports shows that many of the other fires were started by inmates, and none of these three individual defendants were mentioned as having been involved in any of the other incidents [*id.*]. To say that Sergeant Taylor, Officer Andrews, or Officer Dorre actually knew of the risk of fire in Mr. Miles' cell based on other fire incidents in other cells related to other causes where these officials

weren't personally involved is a speculative reach. The law won't permit juries to speculate. *See McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

Mr. Miles also includes a history of electrical work orders and cites one specific order from March 7, 2018 that noted an "[e]lectrical outlet sparked and caught on fire. Needs repaired ASAP" [ECF 81-20 at 20]. The names listed next to that order are Kirk Zimmerman and Ronald Tidey; none of the individual defendants in today's case are mentioned [*id.*]. Based on that work order, at most, perhaps these defendants should have known of a risk of a possible electrical fire in Mr. Miles' cell, but "it is not enough that [they] should have known of a risk." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). "[D]eliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Id.* Mr. Miles hasn't presented evidence to permit a reasonable jury to find that these officials actually knew of the risk and acted intentionally or criminally reckless in disregarding the risk.

Certainly, too, these defendants didn't act deliberately indifferent to any risk or need once the fire started and the fire alarm went off. Mr. Miles says the defendants didn't timely respond to the fire, but Officer Andrews and Sergeant Taylor arrived at his cell within a few minutes, and the fire was already out [ECF 75-2 at 29:4-19]. Officer Dorre wasn't part of the responding team and never witnessed any fire in Mr. Miles' cell [ECF 75-5 ¶ 4]. Mr. Miles says that Officer Andrews and Sergeant Taylor didn't summon the Indiana State Prison's inmate firefighters, nor did they bring fire protection equipment, including a fire extinguisher, with them when they arrived at Mr. Miles' cell. Even if it could be said that Officer Andrews and Sergeant Taylor acted negligently in their response to the fire, that wouldn't satisfy the deliberate indifference standard. *See Petties*, 836 F.3d at 728. The Eighth Amendment does not demand flawlessness from prison officials. *See Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004).

Mr. Miles argues how these defendants failed to follow internal, state, and national policies in response to the fire,[4] but "[t]he [E]ighth [A]mendment does not constitutionalize the Indiana Fire Code," *French*, 777 F.2d at 1257, nor does it require compliance with specific administrative requirements, *id.* at 1257-58. "[A] constitutional suit is not a way to enforce state law through the back door." *Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir. 2019). Mr. Miles specifically complains that the defendants never reported the fire to any fire department, and consequently no investigation was ever conducted as to the causes and circumstances surrounding the fire as required by Indiana law, citing Ind. Code § 36-8-17-7. Even if any of these individual defendants were required to report the fire under IDOC policy or the state fire code, this after-the-fact reporting requirement has no bearing on whether the defendants knew of and disregarded an excessive risk of harm to Mr. Miles before the fire occurred or while it was occurring. *See Thomas*, 2 F.4th at 720. The court here is only focused on the constitutional claim, not the enforcement of state law requirements. *See Wozniak*, 932 F.3d at 1011.

Mr. Miles further argues that, because these defendants never reported the fire, there wasn't a proper investigation of the fire and certain fire scene artifacts weren't preserved. This doesn't affect whether these defendants acted deliberately indifferent toward Mr. Miles before or during the fire, nor does Mr. Miles demonstrate why any inference from spoliation would bear on the subject of the officers' knowledge. *See Thomas*, 2 F.4th at 720. Mr. Miles had the benefit of discovery in this case. Mr. Miles says it is the Indiana State Prison's duty to preserve the fire scene artifacts and to investigate the fire, without articulating whether these particular defendants were personally responsible for doing so. The ISP isn't a defendant. The only remaining defendants in this case are Sergeant Taylor, Officer

---

[4] In this section, Mr. Miles relies on opinions from his proffered expert witness, Mr. Fred Hackett. Specifically, "Mr. Hackett opined that ISP failed to follow NFPA [National Fire Protection Association] standards, the Indiana Fire Code, as well as IDOC's own policies and procedures regarding the reporting, response, preservation of items involved, and investigation of the fire" [ECF 81 at 12]. Ultimately, though, Mr. Hackett's opinions aren't relevant to the subjective inquiry of the constitutional analysis. Mr. Miles doesn't rely on his other proffered expert witness, Tina Church, anywhere in his response brief.

8

Andrews, and Officer Dorre in their individual capacities. Mr. Miles cites a letter from defense counsel, which says that the Indiana State Prison didn't preserve certain burned items from his cell [ECF 81-10 at 1]. That letter makes no mention of Sergeant Taylor, Officer Andrews, or Officer Dorre, nor bears on their knowledge. Mr. Miles argues that the failure to preserve evidence and investigate bears on the significance of the fire and how fast it began to spread, but these defendants aren't arguing that the fire didn't pose a significant risk of harm. Instead, they've argued why they weren't deliberately indifferent.

In sum, to prevail on his Eighth Amendment claim, Mr. Miles must show that the officials knew of and disregarded an excessive risk of harm. *Thomas*, 2 F.4th at 720. None of these defendants had any previous knowledge of electrical problems in Mr. Miles' cell. In the few minutes that it took Officer Andrews and Sergeant Taylor to arrive at Mr. Miles' cell in response to the fire alarm, there was no longer an excessive risk of harm because Mr. Miles had already put out the fire. Under these undisputed facts, no reasonable jury could find that Officer Andrews and Sergeant Taylor acted with deliberate indifference. Likewise, Officer Dorre cannot be said to have been deliberately indifferent to the risk because she wasn't part of the responding team and didn't know about the fire in Mr. Miles' cell. Accordingly, the court grants summary judgment on the Eighth Amendment claim.

    C.    *Qualified Immunity.*

Because the court grants summary judgment on the Eighth Amendment claim for cruel and unusual punishment, the court need not reach the issue of qualified immunity because that leaves no evidence of an underlying constitutional violation. *See Los Angeles Cnty. v. Rettele*, 550 U.S. 609, 616 (2007) (once the court determines there to be no constitutional violation, "there is no necessity for further inquiries concerning qualified immunity"); *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (same).

CONCLUSION

Construing all facts and reasonable inferences in favor of Manuel Tyrone Miles, the court GRANTS the defendants' summary judgment motion [ECF 75] and DENIES AS MOOT the motions to exclude testimony of Frederick Hackett [ECF 82] and testimony of Tina Church [ECF 84]. The court DIRECTS the entry of judgment for the defendants. This order terminates the case.

SO ORDERED.

January 6, 2022

*s/ Damon R. Leichty*
Judge, United States District Court